IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JAMES EDWARDS, | * | |
|    Plaintiff | * | |
| v. | * | Civil Case No. 19-cv-01897-JMC |
| MARCUS JOSEPH LASARKO, | * | |
|    Defendant. | * | |

\* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

This case arises from a motor vehicle accident in Baltimore City on September 11, 2016 when Plaintiff's vehicle was rear-ended by Defendant's vehicle while stopped at a light, pushing Plaintiff's vehicle into the vehicle in front of him. Plaintiff, James Edwards, brings this suit against Defendant, Marcus Lasarko, claiming personal injury and related medical expenses stemming from that accident. Plaintiff Edwards seeks $43,471.19 in medical expenses for post-accident treatment of his cervical spine, thoracic spine and, most notably, right shoulder. Plaintiff also seeks an award for pain and suffering based on these injuries. There are no lost wages or other economic claims asserted. Defendant does not contest liability, but argues that not all of the damages claimed are causally related to the accident.

On April 15, 2021, the parties appeared before the Court for a bench trial. The parties stipulated to the admissibility of their respective records binders (Plaintiff's Exhibits 1 through 22 and Defense Exhibits 1 through 4). In addition to Plaintiff's own testimony, Plaintiff presented the *de bene esse* video testimony of an orthopaedic expert, Dr. Irvin Guterman, and entered the transcript from that video as Plaintiff's Exhibit 23. Defendant presented no testimony, but offered

Exhibits 5a-5d, which were photographs of another motor vehicle accident involving Plaintiff in 2014.

Based on the evidence and testimony presented, and pursuant to Rule 52 of the Federal Rules of Civil Procedure, the Court makes the following findings of fact and conclusions of law.

### I.     FINDINGS OF FACT

1. Plaintiff is 53 years old. He has been very physically active throughout his life, including participating in organized athletics beginning in childhood and extending through the time of the September 11, 2016 accident.

2. Although the above history of physical activity included baseball and softball for many years (including up until the time of the accident), there are no medical records documenting symptoms or injury from that repetitive activity in Plaintiff's shoulder, cervical spine or thoracic spine.

3. Plaintiff was in a motor vehicle accident on June 18, 2010 resulting in acute injury to his right shoulder. The shoulder injury was managed by Dr. Leigh Ann Curl, MD, an orthopaedic surgeon. An MRI done at that time showed some "cystic" changes, along with "some minimal area of partial thickness tearing of the rotator cuff bursal side at the supraspinatus attachment," but "no significant evidence of a definitive through and through tear." Def. Exh. 1. Further, the MRI demonstrated a "large superior labral tear [that] radiates somewhat posterior." *Id.*

4. Dr. Curl recommended surgical repair of the shoulder in 2010, but Plaintiff instead opted for conservative treatment (physical therapy), with good results according to his testimony. There are no other medical records or testimony that contradict Plaintiff's assertion that he largely recovered from his 2010 shoulder injury, the last treatment for which was in May of 2011. Further, he testified that he resumed playing softball two to three times per week without restriction, as well as weightlifting.

5. Plaintiff underwent an independent medical evaluation, apparently in connection with the 2010 accident, by Dr. Raymond Drapkin. Dr. Drapkin's records are not in evidence, but are referenced in Defendant's expert's report, which is. Def. Exh. 4. Per Defendant's expert, Dr. Drapkin saw Plaintiff in August of 2011 and then against in August of 2012. *Id.* Dr. Drapkin noted decreased range of motion and tenderness in the shoulder. Dr. Drapkin concluded that Plaintiff had a 12% functional impairment of his shoulder at that time, but also concluded that Plaintiff was not a candidate for surgery. *Id.*

6. Plaintiff was in a car accident in 2014 when he was rear-ended by a tractor-trailer. Pictures from that accident (Def. Exh. 5a-5d) demonstrate significant damage to Plaintiff's vehicle. However, there was no evidence presented that Plaintiff suffered any injury in that accident or underwent any treatment.

7. Plaintiff was injured in a softball game in July of 2016 when he collided with another player while attempting to catch a ball with his **left** arm extended. Subsequent to that collision, Plaintiff sought treatment immediate treatment for his **right** shoulder. Plaintiff reported to the treating health care providers at that time that his pain was minimal and that he was able to lift weights. Def. Exh. 3. Approximately two weeks after the injury, Plaintiff underwent a steroid injection and sought no further treatment. *Id*. Plaintiff was referred for an MRI but apparently did not obtain one at that time. Plaintiff's testimony is that he had a good response to the injection with no residual issues other than some soreness at night, and there is no evidence to the contrary.

8. The accident at issue occurred on September 11, 2016, when Plaintiff was hit from behind by Defendant while stopped at a light, causing him to collide with the car in front of him as well. Plaintiff testified that his right arm was outstretched in front of him on the steering wheel, with his elbow locked, at the time of the accident, resulting primarily in injury to his right shoulder, but also his cervical spine and thoracic spine. Plaintiff's complaints are documented in the medical records, according the synopses of those records in the report (Plt. Exh. 21) and testimony of Dr. Guterman, as well as the report of Defendant's orthopaedic expert, Dr. Robert Cirincione (Def. Exh. 4). Plaintiff also testified that he was unable to sleep at night.

9. As a result of the September 11, 2016 accident, Plaintiff's treating medical providers recommended shoulder surgery, along with pre-surgical and post-surgical physical therapy based on his complaints and the findings of an MRI.

10. Plaintiff undertook the recommended pre-surgical rehabilitation and then Dr. Curl performed the surgery on December 9, 2016.

11. Plaintiff testified that his post-surgical rehabilitation was long and painful. He testified that he had to remain largely in a shoulder immobilizer, and had significant post-surgical pain, weakness and restricted motion in his shoulder. He testified that he was unable to drive, do anything around the house, or participate in various aspects of his job.

12. Plaintiff then engaged in post-surgical rehabilitation of his shoulder and, to a lesser extent, his cervical and thoracic spine, until June of 2017, at a rate of approximately two times per week.

13. Plaintiff testified that he continued to do exercises and stretching on his own, and has largely recovered both in terms of range of motion and strength. He still notes occasional soreness and minimal pain. He has not been able to resume playing softball, which he did frequently prior to the September 11, 2016 accident.

14. Plaintiff was involved in motor vehicle accidents in May of 2017 and October of 2018, but did not require any medical treatment as a result of either.

15. Defendant, per Dr. Cirincione's report, attributes Plaintiff's 2016 shoulder surgery to his history of competitive athletics and a progression of his 2010 shoulder injury "caused by

his continuing throwing activities and general usage of his arm" following that 2010 injury. (Def. Exh. 4). Dr. Cirincione does not cite any corroborating evidence. Dr. Cirincione does not attribute the need for the 2016 surgery to the 2016 car accident. Dr. Cirincione did not examine or speak to Plaintiff.

16. Dr. Guterman is of the opinion that all of Plaintiff's post-accident treatment was caused by the September 11, 2016 accident. Dr. Guterman relies on Plaintiff's lack of documented symptoms between 2010 and 2016, a comparison of the 2010 and 2016 MRI studies which document tears in different locations of the right shoulder, and Dr. Curl's observation at the time of the 2016 surgery that the injury had "no chronic features" per her operative report, thereby effectively ruling out a linkage between the 2010 and 2016 injuries.

17. Dr. Guterman attributes 80% of Plaintiff's current residual shoulder issues to the 2016 accident.

18. The parties stipulate that the medical bills submitted in the amount of $43,271.19 (Plt. Exh. 20) are fair and reasonable, although Defendant disputes all but $7,284 of those claimed expense as being attributable to the September 16, 2016 accident.

## II. LEGAL ANALYSIS AND CONCLUSIONS OF LAW

1. Under Maryland law, in order to recover, Plaintiff must show that the claimed injuries result from and are a reasonably foreseeable consequence of Defendant's negligence. Md. Pattern Jury Inst. 19:10.

2. The effect that an injury might have upon a particular person depends upon the susceptibility to injury of the plaintiff. In other words, the fact that the injury would have been less serious if inflicted upon another person should not affect the amount of damages to which the plaintiff may be entitled. Md. Pattern Jury Inst. 10:3. Further, a person who had a particular condition before the accident may be awarded damages for the aggravation or worsening of that condition, although the burden to show the nature of any aggravation of a pre-existing injury is on the Plaintiff. Md. Pattern Jury Inst. 10:4; *see also Seites v. McGinley*, 84 Md. App. 292, 578 A.2d 840 (1989), *cert. denied*, 321 Md. 385, 582 A.2d 1256 (1990).

3. Plaintiff has shown by a preponderance of the evidence that the medical treatment and related expenses claimed were caused by the September 11, 2016 accident. Quite simply, other than the conclusory opinions of Dr. Cirincione who neither examined nor interviewed Plaintiff, there is no evidence that the shoulder injuries suffered from the accident at issue could be attributable to any other cause. While Plaintiff had always been active in sports, he denies shoulder problems through the time of the 2010 accident (discussed in more detail below), nor is there any evidence whatsoever that Plaintiff sustained any injury from his 2014, 2017 or 2018 accidents. His July 2016 sport injury was minor, and resolved after one steroid injection.

4. As for the 2010 accident, it is significant to the Court that Plaintiff did not report severe shoulder symptoms at that time and pursued only conservative treatment. By contrast,

    Plaintiff had significant and severe symptoms after the 2016 accident, and chose surgical intervention. Dr. Guterman's testimony demonstrated that the shoulder injuries noted in 2016 were in a different location and were of a different severity than those documented in 2010. That is, Dr. Guterman's testimony established that the 2016 shoulder injuries were not an extension or aggravation of the 2010 injuries, as demonstrated by a comparison the MRI studies and Dr. Curl's 2016 operative note failing to document any chronic (i.e., prior) residual injuries.

5. Moreover, there is no evidence in the record suggesting that the cervical or thoracic injuries, though less significant than the shoulder injury, were caused by anything other than the 2016 accident based on the medical records and expect testimony.

6. Based on the above, the Court concludes that all of Plaintiff's claimed medical expenses were, more likely than not, incurred for treatment related to the September 11, 2016 accident. Further, Plaintiff's testimony demonstrated pain, suffering, inconvenience, and physical impairment, entitling him to some award of past non-economic damages as well.

7. As for permanency, which would entitle Plaintiff to some award of future pain and suffering if established, the Court finds that Plaintiff has largely recovered, but has some minimal residual issues, 80% of which are attributable to the 2016 accident, per Dr. Guterman. The Court notes that these complaints are not unlike those residual complaints described by Plaintiff in 2010 in terms of occasional soreness and some stiffness, with the notable exception that, unlike 2010, Plaintiff has been unable to resume playing softball, something he did with frequency. Thus, the Court concludes that some smaller amount for future non-economic damages should be awarded as well.

## III.   CONCLUSION

THEREFORE, a verdict shall be entered in Plaintiff's favor as follows:

1. Past economic damages (medical bills):    $43,471.19
2. Past noneconomic damages:    $30,000.00
3. Future noneconomic damages:    $ 5,000.00

    TOTAL:    $78,471.19

Any open costs to be paid by Defendant. A judgment consistent with this opinion will follow.

Dated: April 16, 2021                  /s/
                                                J. Mark Coulson
                                                United States Magistrate Judge